Lowell C. **MABERRY**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 31A05–9903–CR–103.

Court of Appeals of Indiana.

April 20, 2001.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION ON REHEARING

FRIEDLANDER, Judge.

In an unpublished memorandum decision, this court affirmed Lowell C. Maberry's conviction of voluntary manslaughter, a class A felony. *See Maberry v. State,* No. 31A05–9903–CR–103, 736 N.E.2d 836 (Ind.Ct.App. October 20, 2000). Maberry has petitioned this court for rehearing, urging us to reconsider our decision and alleging as grounds for relief that our previous opinion contained numerous factual errors. We grant the petition for the limited purposes of 1) reminding defense counsel of the relevant legal standards that guide Indiana appellate courts when reviewing appeals from criminal convictions and the constraints placed thereby upon reviewing courts, and 2) addressing what we consider to be the inappropriate tone adopted in the petition for rehearing.

We reproduce below the facts as set out in that opinion:

The facts favorable to the conviction are that Maberry was acquainted with the victim, Paul Hall, with whom he had previously engaged in the scrap metal business. In January 1998, Maberry and his wife, Mary Jo, and daughter moved into Hall's house. On March 5, 1998, Maberry and Hall argued because Hall would not give Maberry a receipt for rent. On the evening of March 6, while Maberry was at work, Hall pounded on the door of the room in which Maberry's wife and daughter were sleeping and ordered them to quiet their barking dogs. After Mary Jo had done this, Hall demanded that she pay $100.00 for back rent. Mary Jo was so frightened by the experience that she and her daughter went outside and slept

in their car. After Maberry returned home at 1:30 a.m., he and Mary Jo decided not to return to Hall's house and drove to his employer's property and slept in their car.

Early in the morning of March 7, they returned to Hall's house to get some of their belongings. At 5:30 that evening, Maberry returned alone to Hall's house to retrieve more belongings and to feed his dogs. This time, Hall confronted Maberry and demanded that Maberry pay $100 in rent. Hall also refused to allow Maberry to get his belongings. Hall informed Maberry that he had consulted with mutual acquaintances Dixon Jones and Pat Shea, who agreed that $100 for rent was fair. Maberry suggested that they talk with Jones and Shea. Maberry, who was with his wife and daughter, drove to Shea's mobile home and spoke with him. He told Shea that Hall was "kind of flipping out." *Record* at 718. Shea and Maberry conversed for approximately two or three minutes before Hall drove up. Hall "jumped out [of his truck] and started raving, cussing, [and] calling [Maberry] names." *Record* at 720. Hall continued to call Maberry names, told Maberry he knew Maberry had a gun, and told Maberry he did not have "enough damn guts to use it." *Id.* After several seconds, Maberry walked up to Hall, pulled out a pistol, and shot Hall once in the chest. Hall died shortly thereafter.

*Slip op.* at 2–3.

### 1.

Maberry presented only two issues for review in the original appeal: 1) whether the trial court err in refusing to permit Maberry to present certain evidence relative to his self-defense claim, and 2) whether the evidence was sufficient to support the conviction. In his petition for rehearing, Maberry asserts that this court "erro-

neously and materially misstated the record", Petition for Rehearing at 1, in nine particulars. We are moved to respond to Maberry's petition in part because of the tone adopted in presenting his allegations of error to this court, and in part because the petition affords this court an opportunity to remind counsel of the appropriate standard of review.

It is firmly established that this court may not reweigh evidence or judge witness credibility when reviewing criminal convictions. *See Albrecht v. State,* 737 N.E.2d 719 (Ind.2000). This limitation upon our review has a practical basis. "The trier of fact is in a position to see, hear and observe the demeanor of the witnesses. This court is not in such advantageous position." *Black v. State,* 153 Ind.App. 309, 287 N.E.2d 354, 355 (1972). Moreover, the trier of fact is in a superior position not only to judge witness credibility, but also to evaluate and synthesize all of the evidence presented at trial. From its advantageous position, the trier of fact is simply better situated to determine what happened with respect to the facts upon which the prosecution is based. For these reasons, we accord great deference to the jury's assessment of the facts. We will set such determinations aside only when we are convinced that a conviction was based upon inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Newson v. State,* 721 N.E.2d 237 (Ind.1999). Such cases are rare, and occur only "[w]hen a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence" of guilt. *Id.* at 240.

With these principles in mind, we turn now to Maberry's petition for rehearing. We generally would not address each specific claim of error in a petition for rehear-

ing when the assertions are without merit. We do so here, however, because it might be illuminating to appellate defense counsel to observe how the aforementioned principles apply in this case. We will set forth each assertion of factual error made in the original opinion and the portion of the record we relied upon in including that fact in our opinion. We will conclude our analysis with general observations about Maberry's claims in this regard.

### a.

Maberry claims that the opinion is "misleading," Petition for Rehearing at 2, in stating that Shea and Maberry were talking near the front door of Shea's mobile home when the victim (Hall) drove up. That statement was based upon the following record excerpt from Shea's testimony:

> [Shea]: Yes, we talked there a few minutes about Paul [Hall] and he said something—Paul was kind of flipping out, going kind of getting weird [sic] and he said he had called and of course I knew Paul had been treating through Life Springs up in Clarksville. And he said he had tried to call them to see if they could do something about him and what have you 'cause we didn't complete the conversation until Paul drove up.

> Q. Okay. Now, where did this conversation take place?

> A. I was standing up in the doorway of the trailer and he was standing on the ground right outside.

*Record* at 718. Shea later testified that he was standing only "four or five" feet away from the defendant during that conversation, and that the defendant was standing "down at the bottom of the [three] steps" leading up to the door of Shea's trailer. *Id.* at 719.

### b.

Maberry claims that the opinion "erroneously says that both Shea and Maberry admitted that Hall did not threaten Maberry before he was shot." Petition for Rehearing at 2. Shea testified that he could not say whether Hall threatened Maberry. Maberry testified that Hall did not insult him or call him names. The prosecutor asked the following question: "Okay. But did that, is that the way he said that, 'Go ahead and shoot me,' or 'you've got the gun,' or something like 'you don't have enough guts to,' or something like that?" Maberry responded: "No, he didn't. I didn't hear any of that; it was just 'go ahead and shoot me.'" *Record* at 1296.

We agree that there is arguable validity in Maberry's assertion that neither Maberry nor Shea admitted that Hall did not threaten Maberry. It would perhaps have been more accurate to state that neither Maberry nor Hall could testify that Hall threatened Maberry. Regardless, this does not alter the analysis for purposes of evaluating Maberry's claim of self-defense and does not constitute sufficient cause to revisit our decision in that regard.

### c.

Maberry claims that the opinion "erroneously says that while Hall was cussing, raving and calling Maberry names, he was standing his ground about six feet from the front of Shea's truck, and that Hall and Maberry were separated by at least one truck length." Petition for Rehearing at 2.

At trial, Shea testified as follows: "Yeah, [Hall] steps out and he as I said, he didn't much get six foot from his truck, of course within the distance, that's about all the distance, the space there is between the road and the front of my truck." *Record* at 721. When asked if Maberry and Hall approached each other before the shooting, Shea responded: "Yes. [Maber-

ry] went out to where [Hall] was." *Id.* at 722. In the aforementioned excerpt, Shea identified the parties by their first names.

### d.

Maberry claims that the opinion "erroneously says that Hall did not advance toward Maberry after Hall got out of his truck...." Petition for Rehearing at 2.

We refer Maberry to the excerpt of Shea's testimony set out in (c) above. We note also that, in the petition for rehearing, Maberry cites multiple places in the record that presumably refute the opinion's statement in this regard. These include a diagram of the scene and a photograph of the victim's body lying where Hall fell after being shot. Neither the diagram nor the photograph refutes Shea's testimony that Hall was shot at approximately the location where he first alighted from his vehicle. Still other citations to the record cited by Maberry refer to different portions of Shea's testimony. Each of these passages is consistent with Shea's earlier testimony that Maberry proceeded out into the street and confronted the victim where he was standing.

### e.

Maberry asserts that the opinion "erroneously says that Shea testified that Maberry pulled out his gun in response to Hall's taunt and shot him in the chest." Petition for Rehearing at 3.

In fact, the opinion states: "Hall, who was not armed, taunted Maberry to use the gun that Hall knew Maberry carried. Maberry did, shooting Hall once in the chest." Slip op. at 5. Both Shea and Maberry testified that Hall taunted Maberry to shoot him and, of course, it is undisputed that Maberry shot Hall once in the chest. Maberry's characterization about what the opinion states in this regard is simply inaccurate.

### f.

Maberry claims that the opinion "erroneously says that Maberry testified that he shot Hall beside Shea's truck, not in front of it." Petition for Rehearing at 3.

Maberry testified that after he shot Hall, Hall "backed up some and turned and then went down on one knee and stayed there, I don't know how long, and then he stood up and sent [sic] down on the hood of the truck...." *Record* at 1296. To set the scene, the shooting occurred outside of Shea's mobile home. Shea's truck was parked in front of his mobile home, facing out toward the road (it had been backed into its parking spot). Hall drove up and stopped his truck in the road, alighted, and stood in the road by his truck, approximately six feet from the front of Shea's truck. Maberry, according to his testimony, was between Hall and Shea's mobile home. According to Maberry's testimony, Hall advanced toward him until the two stood face-to-face. Hall would have been facing the same direction as was the back of Shea's truck, whereas Maberry would have been facing the same direction as the front of Shea's truck. Accordingly, in order to arrive at the front of Shea's truck after "backing up some," Hall would have to have been standing beside Shea's truck when he was shot. Although the statement that Maberry claimed to have shot Hall while standing beside Shea's truck is an inference, it is the only logical inference in view of the relevant testimony, the physical layout of the scene, and the position of the participants.

### g.

Maberry claims the opinion "erroneously says that the physical evidence corroborates Shea's version of events, because photos taken at the scene reveal a bloodstain on the ground at approximately the spot Shea said Hall was standing when he was shot." Petition for Rehearing at 3.

Maberry claims there is no evidence that the stain depicted on the photograph was a bloodstain.

When the prosecutor introduced the photograph into evidence during Maberry's cross-examination, he asked, "Mr. Maberry, can you show any reasonable explanation of why the blood is over towards Paul Hall's truck? Over in here in this area, between his body and the truck?" *Record* at 1325. Maberry responded, "Not unless the car was back further." *Id.* As clearly reflected in the above exchange, Maberry did not dispute at trial the prosecutor's assumption that the stain in the photograph was a bloodstain.

### h.

According to Maberry, the opinion "repeatedly relies on Shea's testimony as representing the facts favorable to the conviction. But the prosecutor urged the jury to reject Shea's testimony because Shea couldn't accurately see what occurred." Petition for Rehearing at 3.

Initially, it should be noted that, even assuming that the prosecutor did invite the jury to reject Shea's testimony, the jury was not bound to accept that invitation. Moreover, the portions of the record that are cited by Maberry in support of this assertion reflect that the prosecutor in fact did not ask the jury to find Shea's testimony incredible. Rather, the prosecutor noted the weaknesses in Shea's testimony (e.g., he had poor vision), but nevertheless implied that his testimony was sufficiently credible to provide evidence pertaining to several relevant and material facts.

### i.

Maberry claims that the opinion "erroneously finds that the exclusion of evidence of specific acts of violence by Hall was harmless error." Petition for Rehearing at 3. We need not address this argument because it presents nothing that was not considered by the court in rendering its decision.

In summary, although there arguably is partial validity in Maberry's second claim upon petition for rehearing, the inaccurate or imprecise statement set forth in the opinion was not material to the analysis for purposes of evaluating Maberry's claim of self-defense. In making all of the other allegations of factual error, Maberry either ignored evidence favorable to the conviction, focused upon evidence not favorable to the conviction, or generally invited this court to reweigh the evidence and reassess witness credibility or draw inferences that differed from the reasonable inferences drawn by the jury. Frankly, much of Maberry's argument upon petition for rehearing amounted to little more than quibbling about facts not material to the determination of guilt. We stress again that all of the above are completely at odds with the well-established standards that guide us upon appellate review. We advise counsel that a petition whose success depends upon our ignoring the constraints placed upon us has no chance of success.

### 2.

■ Finally, we write briefly to address the tone of Maberry's petition for rehearing. We appreciate, and indeed expect, zealous advocacy from criminal defense counsel. *See* Ind. Professional Conduct, Preamble. We do not, however, intend thereby to sanction, nor will we accept, a lack of decorum in the pursuit of that end. *See* Prof. Cond. R. 3.5, Comment.

■ In his petition for rehearing, Maberry's appellate counsel advanced claims that this court "ignore[d]" an issue, Petition for Rehearing at 4, and set forth facts in such a way as to be "misleading," *Id.* at 2. These assertions go beyond claims of error and imply intentional conduct on this part of this court. As such, they are unacceptable. We encourage counsel to, in fu-

ture appellate endeavors, adopt a different tone—one that is no less zealous, but which conveys the appropriate respect for an appellate court of this state.

Petition for rehearing denied.

DARDEN and KIRSCH, JJ., concur.